**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

Ronald Crawley,               )
                                   )
         Petitioner,       ) Case No. 1:09-CR-83
                                   )
   vs.                          )
                                   )
United States of America,    )
                                   )
        Respondent.     )

<u>O R D E R</u>

This matter is before the Court on Petitioner Ronald Crawley's motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255.  For the reasons that follow, Petitioner's motion is not well-taken and is **DENIED.**   Doc. No. 81.  Additionally, Petitioner's motion to compel and to expand the record (Doc. No. 82) and motion to compel CJA appointed counsel to respond to his claims (Doc. No. 89) are not well-taken and are **DENIED.**

I. <u>Background</u>

Petitioner is a federal prisoner serving a term of 240 months of imprisonment following his conviction after a jury trial for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).  Because Petitioner had previously been convicted for four "violent felonies," he was subject to a mandatory minimum sentence of 15 years under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(1).

The evidence presented by the prosecution at trial showed that on the afternoon of March 31, 2009, Cincinnati police officers became involved in a foot pursuit to arrest a man named Donny Howell on an outstanding warrant.  During the chase, Howell tried

to throw a pistol he had in his possession over a fence. The pistol, an Iver Johnson .38 caliber revolver, struck the fence, breaking the handle, and then landed on the pavement. While the officers had Howell on the ground to handcuff him, Petitioner scooped up the pistol and fled down an alley. While officers were chasing him, Petitioner also tossed the pistol on the ground. The officers then apprehended Petitioner a short time later. While the officers were transporting Petitioner and Donny Howell to jail, he said to them, "I will do anything in my power to keep you from taking a young black man to jail."

When the pistol broke apart, the main spring separated from the frame. The officers, however, recovered the main spring and easily re-attached it to the pistol. With the main spring back in place, the pistol was operable and was successfully test-fired by the officers.

Petitioner was represented by three different lawyers during the pretrial, trial, and sentencing phases of this case, Gregory Keyser, Darrin Nye, and Robert Fiorenza, respectively.

Prior to trial, Mr. Keyser moved to dismiss the indictment on the grounds that the firearm was inoperable with the main spring missing and that, therefore, Petitioner did not possess a "firearm" within the meaning of the statute. Mr. Keyser also argued that Petitioner should not be subjected to the mandatory minimum sentence under the ACCA because his prior violent felony convictions were too remote to make him a "career offender." Doc. No. 25, at 3. The Court denied the motion to dismiss the indictment. Doc. No. 28. With regard to the firearm, the Court held that the facts alleged in the indictment sufficiently stated an offense for a violation of § 922(g)(1). The

2

Court also held that the alleged inoperability of the firearm was not a defense if the defect could be readily or easily repaired.  Id. at 3.  The Court also held that the remoteness of Petitioner's prior convictions was immaterial because the ACCA does not have an age limit on convictions that may be used to enhance the defendant's sentence.  Id.

After the Court denied Petitioner's motion to dismiss, he moved for appointment of new counsel.  The Court granted Petitioner's motion and appointed Darrin Nye to represent Petitioner.  Mr. Nye represented Petitioner during the trial and through the preparation of the presentence investigation report.  During trial, Petitioner's defense focused on whether the officers had correctly identified Petitioner as the man who picked up the gun and fled.  Petitioner testified and admitted running through the alley at the time, but claimed that he was not the person who had picked up the pistol but rather was trying to flag down his mother whom he had seen driving on the next street over. Although Mr. Nye did not specifically raise the issue of whether the firearm was an "antique," i.e., manufactured in or before 1898,[1] Mr. Nye's cross-examination of the Bureau of Alcohol, Tobacco, Firearms & Explosives' interstate nexus expert, Special Agent Joshua Bezy, elicited that he was unable to specify the manufacture date of the pistol because it was made before the record-keeping requirements established by the Gun Control Act of 1968.  Doc. No. 70, at 92.  On re-direct examination, however, Agent Bezy testified that in his opinion the pistol was manufactured after 1898 because the butt plate was stamped "September 6, 1904, patent pending."  Id. at 104-05.

---

[1]     18 U.S.C. § 921(a)(16)(A).

3

As indicated above, the jury convicted Petitioner and Mr. Nye represented Petitioner through the preparation of the final presentence investigation report. Mr. Nye raised three objections to the probation officer's report. First, Mr. Nye objected to the probation officer's assessment of three criminal history points for a 1993 conviction for arson on the grounds that it occurred more than 15 years before the commission of the offense of conviction. Second, Petitioner argued that the probation officer's assessment to two criminal history points for a 2007 conviction for domestic violence was incorrect because those charges had been dismissed. Third, Petitioner argued that he should not subjected to a 15 year mandatory minimum sentence under the ACCA because of the age of his prior violent felony convictions and because the firearm was inoperable and he only possessed it for few seconds. Petitioner also argued that the Sentencing Guidelines are advisory and that a 15 year sentence was greater than necessary.

While the preparation of the presentence investigation report was in its final stages, Petitioner filed another motion for appointment of new counsel. Doc. No. 45. In his motion, Petitioner claimed that Mr. Nye falsely accused him of stealing Mr. Nye's cell phone while they meeting to go over the presentence report. The Court granted Petitioner's motion and appointed Robert Fiorenza to represent Petitioner at sentencing.

Mr. Fiorenza did not raise any new objections to the presentence report nor did he file a sentencing memorandum on Petitioner's behalf. The probation officer determined that Petitioner's offense level was 33 according to the Sentencing Guidelines because his prior violent felony convictions made him an armed career criminal. The number and quality of Petitioner's prior convictions placed him in criminal history category VI as did the determination that he is a career offender under the

4

Sentencing Guidelines.  The advisory Sentencing Guidelines range of imprisonment was 235 to 293 months of imprisonment, with the probation officer recommending the Court impose a sentence of 240 months.

During the sentencing hearing, Mr. Fiorenza stood on the objections raised by Mr. Nye and submitted them to the Court for a ruling.  The Court overruled all of the objections raised by Mr. Nye on Petitioner's behalf.  First, the Court found that the probation officer appropriately assigned 3 points to Petitioner's arson conviction because he served time for it in the 15 years preceding the offense of conviction.  Second, the Court found that court documents obtained by the probation officer showed that Petitioner had in fact been convicted of domestic violence.  The Court also noted, however, that Petitioner's objections to the assessment of criminal history points was moot because his qualification as a career offender automatically placed him in criminal history category VI.  Third, the Court determined that it had no authority to sentence Petitioner below the mandatory minimum sentence despite the brief time period in which he possessed the pistol or because of the alleged inoperability of the pistol.

In mitigation, Mr. Fiorenza asked the Court to take into consideration Petitioner's age and the fact that he only had the pistol in his possession for 3 to 5 seconds before discarding it.  Mr. Fiorenza also asked the Court to consider that Petitioner was at a point where he wanted to get his life in order.  The Court, however, sentenced Petitioner to 240 months of imprisonment based principally on his lengthy and serious criminal history and a determination that he presents a serious recidivism risk and threat to public safety.

5

Petitioner filed a timely notice of appeal which raised six assignments of error: 1) the district court erred by submitting the indictment to the jury; 2) his predicate ACCA convictions were not established because of discrepancies between case numbers recited in the indictment and reported in the presentence report; 3) the district court erred by finding that the weapon was a firearm within the meaning of 18 U.S.C. § 921(a)(3) due to its inoperability; 4) his conviction was not supported by sufficient evidence; 5) the district court erred by allowing the prosecution to impeach him and another witness with evidence of prior convictions; and 6) his sentence was not reasonable.  Doc. No. 75, at 2.  The Sixth Circuit, however, rejected each of Petitioner's assignments of error and affirmed his conviction and sentence.  The United States Supreme Court denied Petitioner's petition for a writ of certiorari in October 2012.  Doc. No. 78.

Petitioner then filed a timely motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 which raises three independent ineffective assistance of trial counsel assignments of error with numerous sub-claims.  Generally speaking, Petitioner alleged that each of the three attorneys who represented him was constitutionally ineffective in some way, shape or form.  The Court will describe Petitioner's claims and sub-claims in more detail below.  At the same time he filed his § 2255 motion, Petitioner filed a motion to expand the record (Doc. No. 82).  Petitioner also filed a motion to compel each of his trial attorneys to respond to his claims of ineffective assistance of trial counsel.  Doc. No. 89.  The government filed a motion to expand the record to include a copy of a U.S. Patent issued to Iver Johnson covering

6

the firearm in question in response to the Court's order to produce the firearm for inspection.   Doc. No. 92.

The various motions are fully briefed and ready for disposition.

## II. Standard of Review

To warrant relief under 28 U.S.C. § 2255, a petitioner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict.  Humphress v. United States, 398 F.3d 855, 858 (6th Cir. 2005).  Relief is warranted only where a petitioner has shown "a fundamental defect which inherently results in a complete miscarriage of justice." Davis v. United States, 417 U.S. 333, 346 (1974).

Petitioner is entitled to an evidentiary hearing on his claims unless the record conclusively establishes that he is not entitled to relief.  Smith v. United States, 348 F.3d 545, 550 (6th Cir. 2003).  The Court concludes that the record conclusively establishes that Petitioner is not entitled to relief.  Therefore, he is not entitled to an evidentiary hearing on any of his claims.

## III. Analysis

As stated above, Petitioner asserts three independent claims of ineffective assistance of trial counsel with numerous sub-claims.  To prevail on a claim of ineffective assistance of counsel, a petitioner must establish two elements: 1) counsel's performance fell below an objective standard of reasonableness, and 2) there is a reasonable probability that, but for the deficiency, the outcome of the proceedings would have been different.  Strickland v. Washington, 466 U.S. 668, 694 (1984).  "A

reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id.

## A. First Assignment of Error

Petitioner's first claim generally relates to unprofessional errors allegedly committed by Mr. Keyser.

First, Petitioner argues that Mr. Keyser erred by not moving to dismiss the indictment on the grounds that the government improperly federalized a local offense. In other words, apparently according to Petitioner, his possession of a firearm should have been handled as a local matter for obstruction of justice rather than as a federal prosecution for possession of a firearm and Mr. Keyser should have moved to dismiss the indictment on that ground.  This assignment of error is meritless.  Congress has authority under the Commerce Clause to criminalize the possession by convicted felons of firearms that travel in interstate commerce.  United States v. Turner, 77 F.3d 887, 889 (6th Cir. 1996).  Trial counsel is not required to raise meritless arguments and defenses in order to avoid a charge of ineffective assistance of counsel.  Ludwig v. United States, 162 F.3d 456, 459 (6th Cir. 1998).

Second, Petitioner argues that Mr. Keyser erred by moving to dismiss the indictment based on the inoperability of the firearm instead of its antiquity, which in his view was the correct ground for dismissal.  The Court will address Petitioner's contention that the firearm was an "antique" in more detail below.  It is sufficient to resolve this argument to note that whether the firearm is an "antique" is an affirmative defense to a § 922(g)(1) charge.  United States v. Smith, 981 F.2d 887, 891-92 (6th Cir. 1992).  An indictment, however, is sufficient on its face if contains the elements of the

8

offense, fairly informs the defendant of the charge which he must defend, and allows him to plead acquittal or conviction to bar future prosecutions for the same offense. United States v. Landham, 251 F.3d 1072, 1079 (6th Cir. 2001).  The indictment must allege facts which, if proved, would establish a prima facie case that the defendant committed the crime charged.  Id.  Moreover, in considering a motion to dismiss the indictment, the trial court may not make factual findings that invade the province of the ultimate factfinder.  United States v. Craft, 105 F.3d 1123, 1126 (6th Cir. 1997).

In this case, the indictment alleged that Petitioner possessed a "firearm" on the date in question.  Therefore, in considering any motion to dismiss the indictment, the Court would have been required to accept as true the factual allegation that the firearm was not eligible for the antiquity exception.  Additionally, whether the firearm was actually an antique was a factual question for the jury to resolve.  The Court would not have been authorized to resolve that question on a motion to dismiss the indictment.  Consequently, any motion to dismiss the indictment based on the alleged antiquity of the firearm would not have been well-taken and likely even frivolous.  Accordingly, this assignment of error is meritless.

Third, Petitioner argues that Mr. Keyser erred by moving to dismiss the indictment on the grounds that his predicate offenses did not establish that he was a "career offender" when he should have argued that they did not establish that he was eligible for an enhanced sentence under the ACCA.  It is true that Mr. Keyser did mix apples and oranges to some degree because he referenced both the career offender provisions of the Sentencing Guidelines as well as the ACCA in moving to dismiss the indictment.  Nevertheless, any error was harmless because the Court actually

9

considered the motion as arising under the ACCA and not the Sentencing Guidelines. This assignment of error is without merit.

Fourth, Petitioner argues that Mr. Keyser erred by filing the motion to dismiss under Rule 29 of the Federal Rules of Criminal Procedure, which governs motions for judgment of acquittal before and after the jury's verdict, instead of under Rule 12 of the Federal Rules of Criminal Procedure, which addresses pretrial motions. At most this was a harmless procedural error which did not affect Petitioner's substantial rights. This assignment of error is without merit.

Fifth, Petitioner alleges that Mr. Keyser and/or Mr. Nye were ineffective for failing to challenge the eligibility of his predicate offenses to enhance his sentence under the ACCA. Petitioner alleges that counsel failed to confirm that the case numbers of his prior convictions were alleged correctly in the indictment. He also alleges that two of his prior convictions do not qualify as violent felonies and that counsel was ineffective for not raising this argument.

Petitioner raised his first sub-argument concerning the case numbers on direct appeal and the Sixth Circuit concluded that the incorrect case numbers did not affect his substantial rights. Doc. No. 75, at 2-3. Absent highly exceptional circumstances, which are not present in this case, Petitioner may not use a § 2255 motion to relitigate an issue that was decided against him on direct appeal. Jones v. United States, 178 F.3d 790, 796 (6th Cir. 1999).

Petitioner's second sub-argument is also without merit. The indictment in this case identified four predicate ACCA offenses, a 1982 conviction for complicity to commit

10

robbery, a 1982 conviction for robbery, a 1991 conviction for aggravated assault, and a 1992 arson conviction. Under the ACCA, a "violent felony" is defined as:

> any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that—
>
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another[.]

18 U.S.C. § 924(e)(2)(B). Since the indictment alleged four predicate ACCA offenses, Petitioner's trial counsel would have had to argue and establish that at least two of the prior convictions alleged were not "violent felonies" in order to avoid imposition of the mandatory minimum sentence.

Petitioner first claims that he was never convicted of aggravated assault but rather only of negligent assault, which is a misdemeanor. Petitioner, however, has not supported this contention with anything but his own assertions. Moreover, the state court docket from this case clearly reflects that Petitioner pled guilty to aggravated assault in violation of Ohio Rev. Code § 2903.12. See http://www.courtclerk.org/ case_summary.asp?sec=history&casenumber=B919023 (visited February 11, 2014); United States v. Garland, 991 F.2d 328, 332 (6th Cir. 1993) (taking judicial notice of a Ghanian criminal judgment "to prove that it was rendered and as prima facie evidence of the facts adjudicated"). Aggravated assault under § 2913.12 is categorically a violent felony under the ACCA. United States v. Anderson, 695 F.3d 390, 399-401 (6th Cir.

11

2012). Consequently, Petitioner's trial counsel was not ineffective for failing to argue that he had previously been convicted of negligent assault and not aggravated assault.

Since Petitioner does not allege that his previous convictions for robbery and arson are not violent felonies, this last finding would be sufficient alone to reject his contention that he was ineligible for an enhanced sentence pursuant to the ACCA. Nevertheless, his claim that his conviction for complicity to robbery is not a violent felony is equally without merit. Petitioner apparently contends that complicity to commit any offense is a strict liability offense, and hence, categorically not a violent felony under the ACCA. See Begay v. United States, 553 U.S. 137, 148 (2008) (indicating that the ACCA's definition of "violent felony" does not encompass strict liability offenses). Petitioner's contention, however, that complicity to robbery is a strict liability offense is incorrect. Under Ohio law, a defendant's conviction under the complicity statute means that he aided and abetted the commission of the principal offense with the same criminal intent as the principal offender and, in fact, it means that he is equally as culpable as the principal offender. In re T.K., 849 N.E.2d 286, 288 (Ohio 2006); Ohio Rev. Code § 2923.03(F) ("Whoever violates this section is guilty of complicity in the commission of an offense, and shall be prosecuted and punished as if he were a principal offender."). Moreover, it makes no difference that Petitioner was convicted of complicity or aiding and abetting robbery in determining whether he was convicted of a violent felony. United States v. Salean, 583 F.3d 1059, 1060 n.2 (8th Cir. 2009) (collecting cases). Accordingly, this assignment of error is without merit.

In summary, Petitioner has failed to demonstrate that Mr. Keyser committed any substantive professional errors or that he was prejudiced in any way by Mr. Keyser's representation.  Accordingly, Petitioner's first assignment of error is without merit.

B. Second Assignment of Error

Petitioner's second assignment of error and sub-assignments of error generally concern Mr. Nye's representation of Petitioner during the trial.

First, Petitioner argues that Mr. Nye was ineffective for failing to move for a continuance of trial in order to develop a "counter-identification case" and to investigate whether the firearm exempted him from prosecution because it was an antique.  Mr. Nye's failure to request a continuance to investigate these lines of defense was a professional error only if it resulted in some prejudice to Petitioner during the trial.  The Court, therefore, addresses these two issues in the context of Petitioner's other assignments of error.

Second, Petitioner argues that Mr. Nye was ineffective for failing to make a motion in limine to exclude submitting the ACCA recidivist enhancement to the jury in the indictment, jury instructions, and verdict form.  In other words, Petitioner argues that Mr. Nye should have ensured the jury was not aware that he had been charged under § 922(g)(1) and § 924(e).  Despite the fact that the jury was never informed of the penalties for the offense Petitioner was charged with, he thinks that the jury's natural curiosity might have led it to investigate what the references to § 924(e) meant.  Petitioner, however, is only speculating that the jury might have researched and discovered the statutory penalties set out in § 924(e).  Moreover, the Court specifically instructed the jury not to do any independent research and investigation and juries are

13

presumed to follow the trial court's instructions.  United States v. Guzman, 450 F.3d 627, 629 (6th Cir. 2006).  Consequently, there are no reasonable grounds to believe that the jury independently learned that Petitioner was subject to a recidivist sentencing enhancement merely because § 924(e) was referenced in the instructions and verdict form.  Therefore, Mr. Nye's failure to request that all references to § 924(e) be stricken from the jury instructions and verdict form cannot have prejudiced Petitioner.

Relatedly, Petitioner again contends that the Court erroneously submitted the indictment to the jury.  Petitioner, however, raised this issue on direct appeal and the Sixth Circuit ruled that there was no evidence that the indictment was submitted to the jury.  Doc. No. 75, at 2.  Petitioner is not entitled to re-litigate this issue in his § 2255 motion.  See supra, at 10.

Third, Petitioner argues that Mr. Nye erred by not moving in limine to prohibit the government from impeaching defense witness Renika Palmer with her prior convictions.  As before, however, Petitioner raised this issue on direct appeal and lost because the improper impeachment of Palmer did not affect his substantial rights in light of the overwhelming proof of guilt.  Id. at 6-7.  Petitioner cannot relitigate that issue again here.  See supra, at 10.

Fourth, Petitioner argues that Mr. Nye erred by not developing "counter-identification evidence" to impeach the "sole eyewitness to claim to be able to positively identify [him] as the suspect who picked up the gun," Police Officer Jason Bolte, with discrepancies between his radio transmission of the incident and his testimony at trial.  Petitioner contends that on collateral review, the Court should compare Officer Bolte's radio transmission of the description of the suspect who picked up the gun to his trial

14

testimony as well as videos from security cameras in the area and at the Hamilton County Justice Center. Petitioner claims that this evidence will show details omitted from Officer Bolte's testimony. Petitioner also finds its remarkable that no witness who identified him remarked that he was wearing a Cincinnati Reds ball cap at the time, implying that this means the witness did not correctly identify him as the suspect who picked up the gun.

The Court first notes that Petitioner's contention that Officer Bolte is the only witness who positively identified him as the person who picked up the gun is simply factually incorrect. Officer Louis Arnold also positively identified Petitioner as the person who picked up the gun and ran. Doc. No. 70, at 7-8,

In any event, there are other substantial problems with Petitioner's argument, not the least of which is that he is simply speculating that: 1) radio transmission tapes and security videos of the incident actually exist; and 2) that they will reveal any material discrepancies between Officer Bolte's contemporaneous radio transmissions and his trial testimony. Trial counsel cannot be faulted for not running down Petitioner's red herrings. Haliym v. Mitchell, 492 F.3d 680, 712 (6th Cir. 2007)("An attorney is not expected to follow up on every possible avenue of inquiry regardless of how improbable it is that that avenue would lead to useful evidence."). Petitioner's contention that he was wearing a red ball cap at the time is completely without evidentiary support. Moreover, if true, it is a fact that was known to him at the time of trial and something he could have testified about himself in an attempt to undermine the reliability of Officer Bolte's testimony.

15

Additionally, as the government correctly points out in its memorandum, in his closing argument, Mr. Nye highlighted the absence of video evidence of the incident as a reason for the jury to find that the government had not proven Petitioner's guilt beyond a reasonable doubt. Doc. No. 71, at 50. This was a reasonable line of argument given that any video tape of the incident just as likely could have confirmed Officer Bolte's testimony as it could have dispelled it. Petitioner testified as to his version of the event, as did Renika Palmer, who was also a defense witness. Moreover, in his closing argument, Mr. Nye highlighted discrepancies between all of the police officers' versions of the incident. Doc. No. 70, at 42-49. In other words, the record reflects that Mr. Nye did develop "counter-identification evidence" to the extent that Petitioner alleges that Mr. Nye failed to impeach or contradict the police officers' testimony. This assignment of error is without merit.

Fifth, Petitioner argues that Mr. Nye erred by failing to investigate whether the firearm was an antique because he would have been exempt from prosecution for being a felon in possession of a firearm. See 18 U.S.C. § 921(a)(3)(stating that the definition of "firearm" does not include an "antique firearm"). As indicated above, a firearm is an "antique" if it was manufactured in or before 1898. To state that this is the most substantial argument in Petitioner's motion is to bestow upon it unwarranted praise.

Nevertheless, in support of this argument Petitioner has submitted evidence that Iver Johnson had a practice of repeating serial numbers on firearms after 100,000 copies were manufactured and that Iver Johnson used the serial number of the firearm in question, C49425, in a batch of pistols manufactured in 1896. Doc. No. 90, at 41, 50. Petitioner thus has a made a modest showing that the firearm in this case possibly was

16

made in 1896 and, therefore, is an antique as defined by § 921.  Of course, Petitioner's evidence also demonstrates that Iver Johnson used serial number C49425 in a batch of pistols manufactured in 1911.  Doc. No. 90, at 40.  Petitioner's evidence also shows that Iver Johnson pistols manufactured in 1911 were stamped "PAT'D.JUNE16.96.AUG.25.96.Sept.4.04, PAT'S PENDING" on the bottom of the butt strap, Doc. No. 90, at 44, whereas pistols manufactured in 1896 had only the serial number stamped on the bottom of the butt strap.  Doc. No. 90, at 42.  Agent Bezy's testimony that the firearm involved in this case was stamped "September 6, 1904, patent pending" on the butt plate is consistent with it being manufactured in 1911.  In other words, Petitioner's evidence more reasonably supports the conclusion that the firearm was manufactured after 1898.  Cf., United States v. Hollon, No. 92-00110, 1994 WL 43396, at *4 (6th Cir. Feb. 11, 1994) (ATF expert properly relied on stamp on firearm to identify place of manufacture of firearm).

Petitioner contends in reply, however, that another pistol manufactured by Iver Johnson, the small frame hammer revolver, was stamped with a patent pending date of September 6, 1904.  According to Petitioner, the fact that the September 6, 1904 patent pending date is associated with a different model pistol casts grave doubt on whether the pistol in this case was manufactured after 1898.  Petitioner also believes that the patent pending date stamp was just a "contrivance" by the manufacturer and not dispositive of whether the pistol was manufactured after 1898.  In other words, Petitioner contends that Iver Johnson could have stamped a 1904 patent pending date on a pistol it manufactured in or before 1898.

17

The same evidence cited by Petitioner, however, indicates that the small frame hammer revolver was manufactured in 1908.  Doc. No. 90, at 20.  Additionally, the treatise cited by Petitioner states that "from 1897 to 1903, nothing was marked on the butt strap, but starting in 1903 the patent dates were marked there."  Id. at 22.  Since the pistol in this case did have stampings on the butt strap, Petitioner's rebuttal evidence still indicates that it was manufactured after 1898.

In an abundance of caution, however, the Court ordered the government to produce the pistol for inspection under the premise that Agent Bezy simply misspoke the patent date on the butt strap and that re-examining it would clear up the confusion. The government, however, reported back that the ATF destroyed the pistol in 2011. The government did, however, submit a U.S. Patent dated September 6, 1904 that was issued to Iver Johnson for cylinder latched revolving firearms and requests that the Court expand the record and take judicial notice of this patent.  Doc. No. 92.  The government also points out that elsewhere in Petitioner's treatise it states that from 1907 to 1911, Iver Johnson stamped, inter alia, "SEPT.06.04.PAT'S PENDING" on the butt strap of the large frame safety automatic revolver.  Doc. No. 90, at 52.  In other words, the treatise indicates that Agent Bezy testified accurately about the markings on the butt strap of the pistol in this case.

The Court has entertained for far too long already the notion that the firearm Petitioner was charged with possessing was manufactured in or before 1898 and, therefore, is an antique.  The Court need not further expand the record to reach that conclusion.  In that regard, therefore, the government's motion to expand the record is moot.  Everything before the Court overwhelmingly proves that the firearm was

18

manufactured after 1898 and, more specifically, that it was manufactured in 1911. Petitioner's contention that Iver Johnson would have or might have stamped a 1904 patent pending date on a pistol actually manufactured in 1896 is, no pun intended, patently frivolous.

Since the record plainly demonstrates that the pistol was not an antique, Mr. Nye was not ineffective for failing to raise the antiquity of the firearm as an affirmative defense to the offense of conviction. This assignment of error is without merit.[2]

### C. Third Assignment of Error

Petitioner's third assignment of error relates to errors allegedly committed by Mr. Fiorenza during the sentencing phase of this case.

First, Petitioner alleges that Mr. Fiorenza erred by deferring to and relying on the objections Mr. Nye lodged to the presentence report instead of conducting his own investigation. Had Mr. Fiorenza done his own investigation, Petitioner contends, he would have discovered that the predicate offenses alleged in the indictment, particularly his aggravated assault conviction, were not violent felonies under the ACCA. The Court has already determined, however, that Petitioner actually was convicted of aggravated assault and that this was a "violent felony" according to the ACCA. Therefore, Mr. Fiorenza's alleged deficient investigation did not prejudice Petitioner at sentencing.

---

[2] Petitioner also argues that the firearm in this case was an antique on the grounds that it "uses rimfire or conventional centerfire fixed ammunition which is no longer manufactured in the United States and which is not readily available in the ordinary channels of commercial trade." 18 U.S.C. § 921(a)(16)(B). This argument is moot, however, because § 921(a)(16)(B) applies to replicas of firearms manufactured before 1898.

Second, Petitioner argues that he had insufficient time to review the presentence report with Mr. Fiorenza and again complains that Mr. Fiorenza failed to object to the ACCA sentencing enhancement.  The Court, however, ruled at the beginning of the sentencing hearing that Petitioner did have sufficient time to review the presentence report with Mr. Fiorenza.  Doc. No. 68, at 2-5.  Petitioner did not appeal that ruling in his direct appeal and he is not entitled to raise that issue for the first time in these proceedings.  Elzy v. United States, 205 F.3d 882, 886-87 (6th Cir. 2000) (court may sua sponte determine that petitioner's claim is procedurally defaulted).  The Court need not address Petitioner's ACCA argument again as that issue has already been comprehensively considered and rejected.

Third, Petitioner argues that Mr. Fiorenza erred at sentencing by raising the issue of the inoperability of the firearm and asking the Court to use its discretion to forego applying the ACCA sentencing enhancement because the Court had previously rejected these arguments.  Petitioner, however, fails to explain how these alleged errors prejudiced him.  The momentary inoperability of the firearm, while not a defense to the charge, was a reasonable ground for Mr. Fiorenza to assert in mitigation of Petitioner's criminal conduct.  Mr. Fiorenza's argument for the Court to disregard the ACCA mandatory minimum sentence was harmless inasmuch as the Court had no authority to do so.  Moreover, Mr. Fiorenza's argument concerning the ACCA and the advisory nature of the Sentencing Guidelines is more reasonably understood as an argument for the Court to impose a sentence below the advisory Guidelines range, which was 235 to 293 months of imprisonment, because the mandatory minimum sentence of 15 years already produced a harsh sentence for the offense.  See Doc. No. 68, at 11 ("We

20

understand that he was found guilty at trial; however, we are asking the Court to further view that these Guidelines are advisory, Your Honor, not mandatory. And for the fact that the gun was held for such a short period of time, that the mandatory minimums are even excessive in this case.  We'd ask the Court to take those into consideration."). This was also a reasonable argument for Mr. Fiorenza to make on Petitioner's behalf.

Petitioner has failed to demonstrate that Mr. Fiorenza made any professional errors during his representation of him during the sentencing phase of this case. Petitioner's third assignment of error is without merit.

### D. Petitioner's Other Motions

Petitioner has also filed motions to expand the record (Doc. No. 82) and to compel his former lawyers to answer his claims of ineffective assistance of counsel. Doc. No. 89.  Neither motion is well-taken.

A district court may allow discovery in collateral proceedings if "specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is entitled to relief."  Williams v. Bagley, 380 F.3d 932, 974 (6th Cir. 2004) (internal ellipses omitted); Sellers v. United States, 316 F. Supp.2d 516, 523 (E.D.Mich. 2004).  Petitioner's motion to expand the record fails to demonstrate that discovery will allow him to develop facts which will entitle him to relief.  The Court has already concluded that Petitioner's trial lawyers were not constitutionally deficient; accordingly, Petitioner is not entitled to require them to file affidavits which respond to his meritless claims of error.

<u>Conclusion</u>

**IT IS THEREFORE ORDERED THAT:**

1. Petitioner's motion to vacate, set aside or correct sentence **(**Doc. No. 81), motion to compel and to expand the record (Doc. No. 82), and motion to compel CJA appointed counsel to respond to his claims (Doc. No. 89) are not well-taken and are **DENIED.**

2. A certificate of appealability will not issue with respect to this order because under the first prong of the applicable two-part standard established in <u>Slack v. McDaniel</u>, 529 U.S. 473, 484-85 (2000), "jurists of reason" would not find it debatable whether this Court is correct in its procedural rulings. Additionally, Petitioner has failed to make a substantial showing of the denial of a constitutional right because reasonable jurists could not debate whether (or for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further." <u>Id.</u> at 483-84. Petitioner remains free to request issuance of the certificate of appealability from the Court of Appeals. <u>See</u> 28 U.S.C. § 2253(c) and Fed. R. App. P. 22(b).

3. The Court certifies pursuant to 28 U.S.C.A. § 1915(a)(3) that an appeal of this order would not be taken in good faith, and therefore **DENIES** Petitioner leave to appeal <u>in forma pauperis</u>. <u>See</u> Fed. R. App. P. 24(a); <u>Kincade v. Sparkman</u>, 117 F.3d 949, 952 (6th Cir. 1997).


Date February 18, 2014           s/Sandra S. Beckwith
                                Sandra S. Beckwith
                          Senior United States District Judge

22